**IMG-301** **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4306
_____

NILESH KUMAR SHAH,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
Agency No. A077-699-780
Immigration Judge: Honorable Henry S. Dogin

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 29, 2010

Before:  Fuentes, Vanaskie and Van Antwerpen, <u>Circuit</u> <u>Judges</u>

(filed: October 1, 2010)
_____

OPINION
_____

PER CURIAM

   Nilesh Kumar Shah ("Shah") petitions for review of the Board of Immigration

Appeals' final order of removal.  For the reasons that follow, we will deny the petition for

review.

Shah, a native and citizen of India, entered the United States without inspection on November 24, 1999. A day later he was served with a Notice to Appear, charging that he was removable under Immigration & Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien who is present in the United States without being admitted or paroled. Shah indisputably is removable as charged. In March, 2004, Shah filed, with the assistance of the Law Offices of Jonathan Saint-Preux, an application for asylum under INA § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.18.

On October 8, 2004, Shah appeared with counsel before an Immigration Judge for a merits hearing. He testified that he is from the State of Gujarat in India and is Hindu. Gujarat has a large population of Muslims, and Shah is an advocate of Hindu rights. Shah owned his own hosiery and cosmetics business, but he and his employees were threatened by Muslims, who also attempted to extort money from him, causing him to close down his business. The Muslims also wanted his house, and, on several occasions, he, his brother, and his father were beaten and injured. In 1998 his house was burned. The IJ denied all relief, finding Shah not credible on the basis of inconsistencies between his asylum application and hearing testimony. He, therefore, failed to establish past persecution. The IJ also concluded that Shah failed to establish a well-founded fear of future persecution in India on account of a protected ground. Shah was ordered removed

to India.

Shah timely appealed to the Board of Immigration Appeals. Attorney Saint-Preux submitted a brief in support of Shah's appeal, in which he highlighted the violence perpetrated by Muslims in the State of Gujarat, notwithstanding that Hindus outnumber Muslims. App. 384-88. On July 17, 2006, the Board dismissed the appeal and affirmed the IJ's finding that Shah failed to credibly establish eligibility for asylum. The Board observed that the adverse credibility finding was based on the fact that Shah testified about certain incidents that had not been included in his asylum application, leading the Board to the conclusion that Shah had attempted to embellish his claims. App. 367.

On August 14, 2006, Shah, through attorney Saint-Preux, filed a motion to reopen and reconsider with the Board. Shah contended that he was not able to help his counsel effectively prepare his application due to the fact that he was detained and his wife was pregnant, which caused him to be distracted and weak. App. 191. He had new evidence that his family had been threatened and harassed, and, in addition, bombings by Muslim terrorists had increased in India. App. 192. The motion was 176 pages long, including numerous internet articles concerning the violence between Hindus and Muslims in the State of Gujarat.

On November 17, 2006, the Board denied Shah's motion. With respect to reconsideration, the Board concluded that Shah had failed to specify any legal or factual error in the Board's affirmance of the adverse credibility finding. With respect to Shah's

motion to reopen and his new evidence, the Board noted that Shah's father's affidavit addressed events that could have been discovered and presented at the October 8, 2004 hearing. The affidavits from the employer of Shah's brother and father were insufficient to justify reopening, particularly when viewed in light of "lingering doubts" about Shah's credibility. App. 185. Last, the Board concluded that Shah failed to provide evidence that country conditions in India had worsened for Hindus since his merits hearing.

Shah obtained new counsel, Sodette Plunkett, Esquire, and timely filed a petition for review. He did not raise any claim of ineffective assistance on the part of attorney Saint-Preux in the brief on appeal. On February 21, 2008, we denied the petition for review, see Shah v. Gonzales, 265 Fed. Appx. 80 (3d Cir. 2008), concluding that, contrary to Shah's contention, the Board did not fail to consider his new evidence, or abuse its discretion in concluding that the evidence could have been discovered and presented at the original merits hearing in October, 2004. Moreover, we rejected as unpersuasive Shah's contention that he had been denied due process, concluding that he had been given a full and fair opportunity to present his evidence at his October, 2004 hearing. See id. at 82.

In 2006, attorney Saint-Preux was convicted of immigration fraud. He was suspended from practicing law in 2007, and, on September 9, 2008, he was disbarred by the State of New Jersey, App. 56. Shah obtained new counsel, Marilyn Dumé, Esquire, and, on April 24, 2009, he again moved to reopen removal proceedings, this time based

on allegations of Saint-Preux's ineffectiveness. In an affidavit in support of his motion, Shah stated that the deficiencies in his asylum application, which led to inconsistencies between that application and his hearing testimony, were attributable to Saint-Preux, who never read to Shah what he (Saint-Preux) put down in the application. App. 25. In addition, Saint-Preux visited him only twice when he was in immigration custody, and he requested supporting documentation only two weeks before the merits hearing. Shah contended that Saint-Preux's deficiencies prejudiced his case. In addition, he contended that conditions in India for Hindus had changed since 2004; Muslim terrorism was on the rise, and he should thus be allowed to file a second asylum application with the assistance of competent counsel.

On October 29, 2009, the Board denied Shah's motion to reopen as time- and number-barred, 8 U.S.C. § 1229a(c)(7)(C); 8 C.F.R. § 1003.2(c)(2). The Board found that Shah did not qualify for the exception from the timeliness requirement based on changed circumstances arising in India, see id. at 1003.2(c)(3)(ii), because his evidence did not establish that conditions in India had worsened for Hindus. Moreover, a motion to reopen may be denied if the new evidence would not likely change the result in the case, Matter of Coelho, 20 I. & N. Dec. 464, 472-73 (BIA 1992), and Shah still had not made out a prima facie case for eligibility for relief from removal. With respect to the allegations of ineffective assistance on the part of Saint-Preux, the Board noted that Shah's former counsel had been convicted of immigration fraud in 2006, suspended from

5

practicing before the Board in 2007, and disbarred on September 9, 2008. Shah thus had

not been diligent in first bringing the claim in April, 2009, and so equitable tolling was

unwarranted, see Mahmoud v. Gonzales, 427 F.3d 248 (3d Cir. 2005). The Board also

declined to exercise its *sua sponte* authority to reopen proceedings, see Matter of J-J-, 21

I. & N. Dec. 976 (BIA 1997). Shah has petitioned for review of this decision by the

Board.

We will deny the petition for review. We have jurisdiction under 8 U.S.C. §

1252(a)(1), (b)(1). We review the denial of a motion to reopen for an abuse of discretion.

Immigration & Naturalization Serv. v. Doherty, 502 U.S. 314, 323 (1992). The Supreme

Court has stated that "[m]otions for reopening of immigration proceedings are

disfavored," noting that "as a general matter, every delay works to the advantage of the

deportable alien who wishes merely to remain in the United States." Id. The agency's

factual determinations are upheld if they are supported by reasonable, substantial, and

probative evidence on the record considered as a whole. Immigration & Naturalization

Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

"An alien may file one motion to reopen proceedings," and such a motion "shall

state the new facts that will be proven at a hearing to be held if the motion is granted, and

shall be supported by affidavits or other evidentiary material." 8 U.S.C. §

1229a(c)(7)(A),(B). Ordinarily, "[t]he motion to reopen shall be filed within 90 days of

the date of entry of a final administrative order of removal." 8 U.S.C. §

6

1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). Shah's second motion to reopen was time- and number-barred, and thus the Board did not abuse its discretion in dismissing it on that basis.

In Mahmood, 427 F.3d at 250-51, we held that attorney conduct can provide a basis for equitable tolling of the ninety-day deadline, but failure to exercise due diligence in asserting ineffective assistance of counsel undermines any claim for equitable tolling of the motion to reopen deadline, id. at 252-53. See also Borges v. Gonzales, 402 F.3d 398, 407 (3d Cir. 2005). "Equitable tolling is an extraordinary remedy which should be extended only sparingly." Mahmoud, 427 F.3d at 253 (quoting Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005)).

Shah contends that he did not learn of Saint-Preux's ineffectiveness until he retained attorney Dumé in December, 2008. In reliance upon the Ninth Circuit's decision in Ghahremani v. Gonzales, 498 F.3d 993, 996-1000 (9th Cir. 2007) (limitation period is tolled until petitioner "definitively learns" of counsel's ineffectiveness), he argues that his unbroken efforts to retain counsel and pursue all available remedies satisfies the due diligence requirement. The Department of Homeland Security does not dispute that Attorney Saint-Preux was reprimanded by the Disciplinary Review Board and the Supreme Court of New Jersey on October 5, 2004, suspended from the practice of law by the State of New Jersey on May 2, 2007, sentenced to 57 months in prison on October 18, 2007, after pleading guilty to the 2006 immigration fraud charges, see United States v. Saint Preux, D.C. Crim. No. 06-cr-00813, and disbarred on September 11, 2008. See

7

Appellee's Brief, at 17.

We conclude that the Board did not abuse its discretion in concluding that Shah did not demonstrate reasonable diligence. We will not disturb the Board's discretionary decision unless it was arbitrary, irrational or contrary to law, see, e.g., Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002), and the Board's decision in Shah's case was not arbitrary, irrational or contrary to law. Here, according to Shah himself, the factual predicate for his claim that Saint-Preux's performance was deficient, was Saint-Preux's conduct in applying for asylum, in failing to amend the application to include all of the incidents about which Shah eventually would testify, and in preparing Shah for his merits hearing. See Petitioner's Brief, at 15. The basis of Shah's claim thus was known to him, at the latest, when Saint-Preux's allegedly deficient attempt to reopen and reconsider the Board's final order of removal fell short on November 17, 2006, the date the Board denied Shah's first motion to reopen.

Shah waited until April 24, 2009, almost 2½ years, to file his second motion to reopen and press his equitable tolling argument based on Saint-Preux's conduct. This falls short of the diligence required to warrant equitable tolling. In Singh v. Gonzales, 491 F.3d 1090 (9th Cir. 2007), on which Ghahremani, 498 F.3d 993, relies, see id. at 999, the Ninth Circuit held that, although the limitations period is tolled until the alien "definitively learns" of counsel's fraud, "[t]he more difficult question is whether [the alien] acted with due diligence to definitively learn of the fraud after he became

8

suspicious," Singh, 491 F.3d at 1096. Despite his obvious dissatisfaction with Saint-Preux's performance, Shah again retained Saint-Preux to file his first motion to reopen. When Shah retained attorney Plunkett after the Board dismissed his first motion to reopen, Shah still did not pursue a claim of ineffective assistance of counsel against Saint-Preux either in his brief on appeal or in a motion before the Board (and Shah does not contend that attorney Plunkett rendered ineffective assistance). Furthermore, by the time we dismissed the petition for review, Saint-Preux had already been disciplined, suspended from the practice of law, and convicted of immigration fraud. Shah does not contend that either he or attorney Plunkett were somehow kept from learning about all of the disciplinary and criminal proceedings against Saint-Preux.

Next, the ninety-day time limit for filing a motion to reopen does not apply if the basis of the motion to reopen is changed conditions arising in the country to which removal has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous proceeding. 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). We conclude, however, that Shah has waived any challenge to the Board's determination that his evidence did not establish that conditions in India had worsened for Hindus. Although the issue appears in Shah's "Statement of Issues" section of his opening brief, the argument section of Shah's brief completely fails to mention this issue. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993) (absent extraordinary circumstances, failure to develop arguments in opening briefs

9

results in waiver of those arguments).  Accordingly, we deem the issue abandoned and waived.[1]

For the foregoing reasons, we will deny the petition for review.

---

[1] Even if we did not find that the issue was waived, we doubt whether the Board's decision was an abuse of discretion.  The articles Shah submitted with his second motion to reopen concerned Muslim bombings and terrorist attacks.  These events do not reflect worsened country conditions in India for Hindus, but instead merely reflect a continuation of those circumstances existing at the time of the October 8, 2004, hearing.  In addition, the articles do not materially pertain to Shah and describe only generalized conditions in India.