**HORACE BROOKS, Appellant/Petitioner**
**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, DEPARTMENT OF EDUCATION, AND PUBLIC EMPLOYEES RELATIONS BOARD, Appellees/Respondents**

S. Ct. Civ. No. 2012-0110

Supreme Court of the Virgin Islands

May 2, 2013

MICHAEL J. SANFORD, ESQ., Sanford, Amerling & Associates, St. Croix, USVI, *Attorney for Appellant*.[1]

LARRY RAYMOND-ROY, ESQ., Public Employee Relations Board, St. Croix, USVI, *Attorney for Appellee Public Employees Relations Board*.

ROBERT A. MALLOY, ESQ., Assistant Attorney General, Office of Collective Bargaining, St. Croix, USVI, *Attorney for Appellee Government of the Virgin Islands*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(May 2, 2013)

HODGE, *Chief Justice*. Horace Brooks appeals from an October 2, 2012 Order issued by the Superior Court of the Virgin Islands, which dismissed his Petition for Review for lack of jurisdiction. Brooks, through his union's attorney, argues that the trial court should have permitted him to amend the caption of his Petition and substitute the union in his place as the petitioner. Because the trial court erroneously concluded that the union's mistake constituted a jurisdictional defect, we will reverse the Order and remand the case.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

In 2004, the Governor of the Virgin Islands appointed Brooks to the position of Assistant Director of Plant Operation and Maintenance at the Department of Education. (J.A. 21.) In January 2007, a new governor took office, and on January 26, 2007, he notified Brooks by letter that his employment would end as of January 31, 2007. (J.A. 23.) Soon thereafter, the United Steelworkers Local 9488 ("Union") filed a grievance and a demand for arbitration with the Government on behalf of Brooks. However, the Government refused to participate because it contended that

---

[1] Attorney Sanford represents Brooks's Union, rather than Brooks himself. However, the petitioner below was inadvertently listed in the trial court caption as Brooks and so he is considered the Appellant in this Court although it is actually the Union that is prosecuting the appeal.

Brooks's position was improperly changed from "exempt" to "classified" in 2006.[2]

The Union brought its dispute with the Government before the Public Employees Relation Board, alleging an unfair labor practice. PERB ultimately concluded that Brooks was not a member of the Union because his position was exempt and therefore not included within the Union's supervisory bargaining unit. (J.A. 5.) Consequently, on May 27, 2009, PERB dismissed the unfair labor practice charge.

On June 16, 2009, the Union's attorney — Michael J. Sanford — filed a Petition for Writ of Review with the Superior Court, requesting that the trial court review PERB's decision and reverse it. (J.A. 8-13.) The Petition contains a caption in which "Horace Brooks" is denominated as the petitioner. The Petition concludes with a request by "Horace Brooks . . . that the Court grant his request for a writ of review . . . ." (J.A. 11.) Finally, the "Certificate of Attorney" indicates that the attorney filing the Petition is "Horace Brooks' attorney." (J.A. 13.)

The Government responded to the Petition with a Motion to Dismiss filed on July 2, 2009. (J.A. 27-34.) The Government argued that Brooks did not have standing to file the Petition because he was not a party to the PERB proceeding. On July 13, 2009, less than two weeks after the Government filed its Motion to Dismiss, Attorney Sanford filed both a Motion to Correct the Petition for Writ of Review, and an Opposition to the Motion to Dismiss. (J.A. 35-41; J.A. 42-45.) Attorney Sanford indicated that he had mistakenly included Brooks as the petitioner but that there was no question the Union was the real party in interest and should be substituted as the petitioner under Rule 17 of the Federal Rules of Civil Procedure. He included with the Motion an affidavit from the Union's International Staff Representative, Randolph Allen, who indicated that he had directed Attorney Sanford to file the Petition for Review on behalf of the Union, notwithstanding the wording in the Petition; that Attorney Sanford had been retained to represent the Union on behalf of Brooks; and that the fees and costs for the Petition "are the exclusive responsibility of the Union." (J.A. 40-41.)

---

[2] The Government alleged that the "position held by Mr. Brooks at his reclassification and termination was historically and appropriately within the EXEMPT service. Moreover, both the Personnel Merit System and the rules governing personnel procedure appear to have been intentionally and/or wantonly violated, most likely through political influence or as a political favor." (J.A. 25.)

On July 27, 2009, the Government opposed the Motion to Correct and replied to Brooks's Opposition to its Motion to Dismiss. (J.A. 46-51; 52-53.) The Government argued that Rule 17 of the Federal Rules of Civil Procedure — allowing substitution of parties due to mistake — required that the mistake be "understandable" and that Attorney Sanford's mistake was not understandable.

After Attorney Sanford replied to the Government's filings, the matter largely lay dormant for more than three years when, on September 13, 2012, the court held a hearing on all outstanding motions. (J.A. 61-111.) At the hearing, the Government and PERB argued that Brooks lacked standing; Attorney Sanford argued that the Union should be substituted for Brooks on the Petition. (*Id.*) At the conclusion of the hearing, the court ruled that the relevant statute, section 380 of title 24 of the Virgin Islands Code — which requires that an aggrieved party file a petition for review within twenty days — was jurisdictional. The court interpreted the statute to mean that if the Union had intended to file a petition for review, it must have done so within twenty days, and because the statute was jurisdictional, Federal Rule of Civil Procedure 17 could not modify its requirements. The court denied Attorney Sanford's request to substitute the Union for Brooks as Petitioner and granted the Government's Motion to Dismiss, deciding that it lacked jurisdiction over the case. This timely appeal followed.[3]

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). Because the Superior Court's October 2, 2012 Order was a final order, this Court has jurisdiction. *See, e.g., Matthew v. Herman,* 56 V.I. 674, 677 (V.I. 2012) (stating that a final order is one which disposes of all claims submitted for adjudication).

The Court reviews the Superior Court's factual findings for clear error and exercises plenary review over the Superior Court's application of the

---

[3] The trial court issued its decision on October 2, 2012. Attorney Sanford filed the Notice of Appeal on October 4, 2012.

law to those facts. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007); *see also People v. John*, 52 V.I. 247, 255 (V.I. 2009) (quoting *United States v. Shields*, 458 F.3d 269, 276 (3d Cir. 2006)), *aff'd*, 654 F.3d 412, 55 V.I. 1324 (3d Cir. 2011).

## B. The Jurisdiction of the Trial Court

The trial court's ruling that it lacked jurisdiction over the Petition for Review turned on its interpretation of section 380(a) of title 24, which states:

> Any party aggrieved by any final order of the PERB made pursuant to section 379 of this chapter, may appeal to the Superior Court of the Virgin Islands for review of such order and shall name the PERB as a party respondent. An application for review must be filed within 20 days after the date of the final order. The rules of procedure of the Superior Court not inconsistent with this chapter shall govern the appeal proceeding. An application not filed in a timely manner shall entitle the prevailing party to summary judgment enforcing the final order of the PERB.

24 V.I.C. § 380(a).

The trial court, considering only what it referred to as the "plain language" of the statute, understood section 380(a) to contain three distinct requirements in order to perfect a petition for review from a PERB decision, each of which it found to be jurisdictional: first, that the review must be sought by an aggrieved party; second, that the petition must be filed within twenty days; and third, that PERB be named as a respondent. (J.A. 104.)

There is no question that the Petition in this case named PERB as a respondent, and that it was filed within twenty days of the PERB decision. The sole question for this Court to resolve is whether it constitutes a jurisdictional defect for Brooks to be named as the petitioner, instead of the Union which represents him.[4]

---

[4] In their brief and at oral argument, the Government and PERB contended that Brooks lacked standing and that "standing is jurisdictional." (Govt's Br. at 6; PERB's Br. at 6.) However, this Court has repeatedly held that standing is not a jurisdictional requirement in the Virgin Islands courts. *McIntosh v. People*, 57 V.I. 669, 687 n.16 (V.I. 2012); *Codrington v.*

## 1. Statutory Requirements and Jurisdiction Generally

■ We begin by recognizing that before we may conclude that the Legislature intended to make a particular statutory requirement jurisdictional, we must find that the Legislature's intent to do so is "clear." *Henderson v. Shinseki*, 526 U.S. ___, 131 S. Ct. 1197, 1202-03, 179 L. Ed. 2d 159 (2011), (explaining that this clarity is required because "the consequences that attach to the jurisdictional label may be so drastic," and because "[j]urisdictional rules may also result in the waste of judicial resources and may unfairly prejudice litigants"); *First American Dev. Group/Carib, LLC v. WestLB AG*, 55 V.I. 594, 602 (V.I. 2011).

■ Appellees cite to several of this Court's prior opinions for the proposition that when a requirement is provided for in a statute, rather than a court rule, it is jurisdictional. (Govt's Br. 15-16; PERB's Br. at 15-16.) However, this Court has never broadly held that in every context, any requirement in any statute is a jurisdictional one.[5] It is true that in some of the Court's earlier cases, we relied on the holding of the United States Supreme Court in *Bowles v. Russell*, 551 U.S. 205, 213, 127 S. Ct. 2360, 168 L. Ed. 2d 96 (2007), and held that "[w]hen the time to appeal or seek review is established by statute, timeliness is a jurisdictional issue[;] therefore, a petition filed out of time deprives the court of jurisdiction to entertain the appeal." *Pichardo v. Comm'r of Labor*, 49 V.I. 447, 450 (V.I. 2008); *see also People v. Freeman*, 57 V.I. 336, 340 (V.I. 2012) (quoting *Pichardo*, 49 V.I. at 450); *Gov't of the V.I. v. Crooke*, 54 V.I. 237, 253 (V.I. 2010) (same); *Mercer v. Bryan*, 53 V.I. 595, 599 (V.I. 2010) (same); *Worldwide Flight Servs. v. Gov't of the V.I.*, 51 V.I. 105, 109 (V.I. 2009) (same). *But see Brady v. Cintron*, 55 V.I. 802, 815-17 (V.I. 2011) (recognizing that courts should first look for a "clear"

*People*, 57 V.I. 176, 187 n.8 (V.I. 2012); *Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 564-65 (V.I. 2012).

[5] In *In re Guardianship of Smith*, 54 V.I. 517, 526 (V.I. 2010), we stated that "when a statute establishes a specific procedure for invoking the Superior Court's jurisdiction, the failure to follow that procedure deprives the Superior Court of its jurisdiction." However, we did not hold in *Smith* that every statutory condition for the seeking of relief in a court is a "specific procedure for invoking the court's jurisdiction." Furthermore, in *First American*, we explained that "a statute is 'jurisdictional' if it 'governs a court's adjudicatory capacity' . . . while a statute is 'claims-processing' if it 'seek[s] to promote the orderly process of litigation by requiring that the parties take certain procedural steps at certain specified times' but do[es] not intend to limit a court's authority to hear a case." 55 V.I. at 611.

indication of jurisdictional intent, and, failing that consider the history, context and text of the statute to determine whether it is meant to be jurisdictional) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006), and *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, ___, 130 S. Ct. 1237, 1246, 176 L. Ed. 2d 18 (2010)). However, the United States Supreme Court clarified in *Henderson* that *Bowles* should not be read to suggest that all time limits established by statute are jurisdictional.[6] *Henderson*, 131 S. Ct. at 1203 ("We reject the major premise of this syllogism. *Bowles* did not hold categorically that every deadline for seeking judicial review in civil litigation is jurisdictional."). Instead, as we noted in *First American*, we must consider in each case whether the Legislature clearly intended that the statutory requirement would be jurisdictional. 55 V.I. at 602.

█ In *Henderson*, the United States Supreme Court drew a distinction between the filing requirements for a notice of appeal from one court to another, and an appeal or review from an administrative agency to a court. *Bowles* was interpreting a line of cases from the first category. Because it had long been the practice of the courts to treat the time limits for filing an appeal from one court to another as jurisdictional, and since the courts should assume that when Congress creates a statute, it is aware of well-established case precedent, it was understandable that the *Bowles* court interpreted the statutory time-filing deadlines for appeals from one court to another to be both mandatory and jurisdictional. *Henderson*, 131 S. Ct. at 1203. For other categories of cases, however, the Court rejected a bright-line rule, and held that the proper approach is to "attempt to ascertain Congress' intent" as to whether the requirement is jurisdictional. *Id.* at 1204.

Because we have relied on the United States Supreme Court's jurisprudence — including *Bowles* — in formulating our approach to the distinction between jurisdictional and claims-processing rules, we will

---

[6] This Court's previous cases relied on the pronouncement in *Bowles* that the United States Supreme Court has "long held [that] when an appeal has not been prosecuted in the manner directed, within the time limited by the acts of Congress, it must be dismissed for want of jurisdiction." *Bowles*, 551 U.S. at 213 (internal quotation marks omitted). However, in *Henderson* the United States Supreme Court clarified that *Bowles* addressed a category of cases involving an appeal from one court to another, and thus *Bowles* was not meant to establish a general rule that every statutory time requirement is jurisdictional. *Henderson*, 131 S. Ct. at 1203.

also accept its clarification of the *Bowles* holding. Consequently, we adopt the *Henderson* approach to the interpretation of statutory requirements, which requires that we attempt to ascertain the Legislature's intent as to whether a procedure embodied in a statute is meant to regulate the process of obtaining review or to limit the court's adjudicatory authority.[7] *Brady*, 55 V.I. at 815-17 (applying an analysis focused on the Legislature's intent); *First American*, 55 V.I. at 602 (same). This is the approach we apply here.

## 2. *The Trial Court's Jurisdiction*

We need not decide whether an untimely filed petition for review under section 380 of title 24 deprives the Superior Court of jurisdiction,[8] for the parties agree that the Petition in this matter was filed within the twenty days provided for by section 380.[9] The trial court, however, not only concluded that the filing deadline was jurisdictional — relying on the *Pichardo* formulation that statutory timelines are, by their very nature, jurisdictional — but also decided that the inclusion in the caption of the name of a petitioner other than an aggrieved party[10] deprived the court of jurisdiction. We disagree.

First, as we have stated, there must be a "clear" sign of the Legislature's intent to make a statutory requirement jurisdictional. *Brady*,

---

[7] *Henderson* did not attempt to overrule the holding in *Bowles* that where the time for the filing of an appeal from one court to another is embodied in a statute, it is a jurisdictional requirement. Thus, any precedent issued by this Court that addresses that issue remains undisturbed. Furthermore, at this time we need not address the effect of the *Henderson* reformulation on other categories of statutory requirements not presented here. As discussed above, we will confront those issues on a case-by-case basis and reevaluate any precedent as required. *Henderson*, 131 S. Ct. at 1204 (rejecting a categorical approach to the labeling of statutory requirements as jurisdictional or claims-processing).

[8] We likewise declined to decide this question in *PERB v. UIW-SIU*, 56 V.I. 429, 435 (V.I. 2012).

[9] The PERB issued its decision on May 27, 2009, and the Petition was filed on June 16, 2009.

[10] The trial court concluded as a matter of law that the aggrieved party is necessarily the party that is dissatisfied with the result of the PERB proceedings. (J.A. 107 ("Mr. Brooks was not a party before PERB, and therefore, could not be an aggrieved party. Before you can be an aggrieved party, you have to be a party in the first place.").) Under the trial court's analysis, the fact that the Union filed the PERB charge on behalf of Brooks meant that Brooks himself was not a "party aggrieved" within the meaning of section 380. (J.A. 103.) However, because it is not essential to the resolution of this appeal, we decline to decide whether Brooks — as the individual who would benefit from a successful petition for review before the Superior Court — could satisfy the "any party aggrieved" requirement stated in section 380.

426

55 V.I. at 815; *First American*, 55 V.I. at 602. Here, there is no clear indication in section 380(a) itself that merely misnaming the petitioner is meant to deprive the court of jurisdiction. Indeed, whereas the statute states that an untimely petition entitles the prevailing party to summary judgment, it does not contain any similar language to require summary judgment or dismissal when the petitioner is misnamed. 24 V.I.C. § 380(a).

Secondly, there is no clear indication that the statute was intended to displace the relevant rules of procedure. Indeed, Section 380(a) specifically states that consistent Rules of the Superior Court should apply to the proceedings. 24 V.I.C. § 380(a). Superior Court Rule 7 adopts by reference any of the Federal Rules of Civil Procedure not inconsistent with the Superior Court Rules. Rule 17(a)(3) of the Federal Rules of Civil Procedure permits the substitution of the real party in interest where a mistake has been made in naming that party, and permits the relation back of the substitution to the filing of the original pleading.[11]

---

[11] Rule 17 of the Federal Rules of Civil Procedure would not apply if it was inconsistent with any Superior Court Rule. SUPER. CT. R. 7. We have instructed that a Federal Rule is inconsistent with a Superior Court Rule where the two address the same subject matter. *See Chciuk-Davis v. People*, 57 V.I. 317, 324-25 (V.I. 2012) ("When a Superior Court rule governs the same subject matter as a federal rule, [] the federal rule cannot apply to Superior Court proceedings pursuant to Superior Court Rule 7 because application of the federal rule would render the Superior Court rule 'wholly superfluous.' " (citing *Corraspe v. People*, 53 V.I. 470, 482 (V.I. 2010)). Superior Court Rule 8 states that the court can "amend any process or pleading for any omission or defect therein, or for any variance between the complaint and the evidence adduced at trial." Rule 17, on the other hand, sets out procedures regarding real parties in interest generally, the representation of minors and appointment of guardians *ad litem*, and discusses how and when real parties may be brought into a case. Superior Court Rule 8 does not address these matters in any way, and merely states the general rule that a court can correct errors or defects in pleadings. Consequently, unlike other Federal Rules we have declared to be inapplicable to practice in the Superior Court, we do not find that Federal Rule 17 and Superior Court Rule 8 address the same subject matter. *See, e.g., Corraspe*, 53 V.I. at 483 (finding FED. R. CRIM. P. 11 to be in conflict with Superior Court 126, both of which explicitly address the procedure for the taking of a criminal plea); *Chciuk-Davis*, 57 V.I. at 325-26 (stating that FED. R. CRIM. P. 32 does not apply because Superior Court Rule 134 already governs the procedure for sentencing defendants and entering judgments). Furthermore, we do not discount the fact the Legislature itself has referenced the applicability of one of Rule 17's provisions. 5 V.I.C. § 73 (referring to the fees and costs incurred for and by a guardian *ad litem* "appointed . . . under Rule 17(c) of the Federal Rules of Civil Procedure"). For all these reasons, we find Rule 17(a)(3) applicable to a motion — such as the one made by the Union below — to correct a caption and substitute a real party in interest.

As *Henderson* noted, the courts should presume that when the Legislature creates a statute, it is aware of the long-standing procedures and practices of the courts. *Henderson*, 131 S. Ct. at 1203 (noting that the Court presumes Congress intended a statute to be jurisdictional if it has "left undisturbed" a "long line" of judicial decisions treating a similar provision as jurisdictional); *see also* 82 C.J.S. *Statutes* § 377 (2013) ("Courts presume that the legislature knew the law when it passed a statute, including judicial interpretations of the law."). The relevant provision of Rule 17 of the Federal Rules of Civil Procedure has been in existence since 1966, more than a decade before the Legislature created section 380(a).[12] *See* Act No. 4440, § 1 (V.I. Reg. Sess. 1980) (enacting 24 V.I.C. § 380). It can be presumed, then, that when the Legislature enacted section 380(a), it was aware that courts routinely permitted the *nunc pro tunc* amendment of captions when a misnamed party is listed in the pleading. *See, e.g., Wadsworth v. U.S. Postal Serv.*, 511 F.2d 64, 66 (7th Cir. 1975) (indicating that the " 'main thrust' " of Rule 17 " 'is to allow a correction in parties after the statute of limitations has run, despite the valid objection that the original action was not brought by the real party in interest' " (quoting 3A J. MOORE, FEDERAL PRACTICE 17.15-1 at 602-03 (2d ed. 1974) (footnotes omitted))); *Gee v. CBS, Inc.*, 471 F. Supp. 600, 614 (E.D. Pa. 1979) (noting that Rule 17 prohibits dismissal "solely on the grounds that the real party in interest is not a party to the action"); *Downs v. Dept. of Public Welfare*, 368 F. Supp. 454, 466 (E.D. Pa. 1973) (recognizing that dismissal is inappropriate under Rule 17 when the real party in interest is not initially a party to the action); *see also Ratner v. Sioux Natural Gas Corp.*, 770 F.2d 512, 520 (5th Cir. 1985) (noting that the "'plain language' " of the rule " 'clearly provides' " that a real party in interest can substitute even after the statute of limitations has run, as long as the matter was originally initiated during the limitations period (quoting *Hess v. Eddy*, 689 F.2d 977, 981 (11th Cir. 1982))).

---

[12] In 1966, subsection (a)(3) was added to Rule 17, providing that

The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real part in interest.

FED. R. CIV. P. 17(a)(3).

 We are further persuaded by the fact that no prejudice would have inured to the Government or PERB in this case if the court allowed the amendment.[13] Even if the time requirement to file a petition for review is jurisdictional — a question we need not reach in this case — it could plausibly be argued that such a requirement is meant to ensure that the respondents are not prejudiced by an extended passage of time between the PERB decision and the Superior Court proceedings, with all the correlating risks of lost evidence and faded memories. *See Sloan v. State*, 947 N.E.2d 917, 920 (Ind. 2011) (stating that the "primary purpose [of statutes of limitations] is to protect defendants from the prejudice that a delay in prosecution could bring, such as fading memories and stale evidence"). Here, it is not clear what prejudice any party would suffer from a petitioner's correction of the caption early in the proceedings, which further suggests that the Legislature would not have made this factor a jurisdictional requirement. We are mindful that dismissal for lack of jurisdiction is a "drastic" result. *Henderson*, 131 S. Ct. at 1202. Particularly in the absence of prejudice to any party, the refusal to reach the merits of a petition for review as a result of the Union's simple mistake in the crafting the document does not appear to comport with the Legislature's intent when it enacted the Public Employee Labor Relations chapter of title 24. *See* 24 V.I.C. § 361 (stating that the purpose of the chapter was to "provide for orderly and constructive relationships between public employers and their employees," and declaring that the Government "shall bargain in good faith," indicating the Legislature's determination to facilitate negotiation and compromise for the benefit of public employees).

 Considering the language and the context of the statute, we find no "clear" indication that the Legislature intended that the failure to correctly name a petitioner in a section 380(a) proceeding would be a jurisdictional defect depriving the court of its adjudicatory powers. While the requirement that an aggrieved party file the petition is mandatory, it is not jurisdictional. *Henderson*, 131 S. Ct. at 1205 (noting that the Court had "rejected the notion that 'all mandatory prescriptions, however emphatic, are . . . properly typed jurisdictional.' " (quoting *Union Pac. R. Co. v. Bhd.*

---

[13] Indeed, when questioned during oral argument, counsel for PERB could not articulate any prejudice PERB or the Government would have suffered if the Union's Motion to Correct the Petition had been granted.

*of Locomotive Engineers & Trainmen Gen. Comm.*, 558 U.S. 67, 81, 130 S. Ct. 584, 175 L. Ed. 2d 428 (2009)). The trial court had jurisdiction over the Petition for Review; therefore, on remand the trial court must apply Rule 17(a)(3) to determine whether the Union will be permitted to correct its caption and proceed to the merits of the action.

## III. CONCLUSION

There is nothing in section 380 of title 24 to suggest that a mistake in naming the petitioner in the caption of the petition for review should constitute a jurisdictional defect, and there are certainly no "clear" indications that the Legislature intended such a result. Consequently, the trial court erred when it dismissed the Petition for Review without considering whether Rule 17 of the Federal Rules of Civil Procedure would permit the *nunc pro tunc* substitution of the Union as the petitioner in this case. For these reasons, the Court will reverse the trial court's October 2, 2012 Order, and remand the case to the Superior Court for further proceedings consistent with this Opinion.